UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MICHAEL RAY WHEELER,                              Case No. 3:12-cv-00469-MMD-WGC

                                     Petitioner,                              ORDER

      v.

JAMES COX, et al.,

                                 Respondents.

This habeas matter comes before the Court on respondents' motion (dkt. no. 15) to dismiss the petition and petitioner's motion (dkt. no. 21) to stay. Respondents contend in the motion to dismiss that multiple claims are unexhausted or are based solely upon state law grounds. Petitioner seeks a stay pending the completion of a pending post-conviction appeal in the state supreme court.

**I.  BACKGROUND**

Petitioner Michael Ray Wheeler challenges his 2007 Nevada state conviction, pursuant to a jury verdict, of domestic battery causing substantial bodily harm, and his adjudication as a habitual criminal. He has challenged the judgment of conviction on direct appeal and in two state post-conviction petitions, the second of which is still pending.

In the first state post-conviction proceeding, counsel was appointed for petitioner. Counsel filed a supplemental state petition and also pursued a number of issues on the first post-conviction appeal. The first state petition was timely, and the claims that were

pursued through to the appeal were rejected on the merits by the state supreme court.

Following the order of affirmance in the first state post-conviction appeal, the remittitur issued on October 11, 2011.  On or about January 30, 2012, Wheeler mailed a second *pro se* state petition to the state district court clerk for filing.  He sought therein to pursue claims that counsel had not pursued on the first petition through to the first post-conviction appeal.

On June 5, 2012, the State filed a motion to dismiss the second petition, apparently on the basis that the second petition was untimely and successive.[1]  The state district court granted the motion to dismiss only in part on August 6, 2012, and it apparently did not dismiss a number of the claims.  Shortly thereafter, on August 10, 2012, the State moved for reconsideration, seeking the dismissal of all of the claims in the second petition as untimely and successive.

On or about August 27, 2012, with the State's motion for reconsideration pending in the state proceedings, Wheeler mailed the federal petition to the Clerk of this Court for filing.  At the time that Wheeler mailed the federal petition for filing, the federal one-year limitation period potentially was subject to expiring only a short time later on October 11, 2012, if the state courts ultimately conclusively hold that the second state petition is untimely.[2]

_____

[1]Respondents did not provide copies of state court record exhibits for all of the proceedings discussed in this paragraph.  The Court has culled the information reflected in the text from the state district court's online docket sheet and from the references back to the earlier proceedings in the order granting the State's motion for reconsideration found in dkt. no. 16, Ex. 20.  The online docket sheet does not enable viewing of the underlying documents, however.  The Court would prefer a more thorough presentation of relevant state court record materials.  The fact that the State initially did not prevail in an effort to dismiss the entire second state petition on procedural grounds is at least as potentially relevant as the fact that the State ultimately did prevail.  With regard to the discussion, *infra*, of petitioner's motion to stay, it appears that the timing of petitioner's pursuit of federal habeas relief had at least something to do with the then-current status of the state procedural defenses raised to the second state petition.

[2]The judgment of conviction was affirmed on April 7, 2008, and the first timely state petition was filed by the state court clerk on June 19, 2008, before the ninety-day time period expired for filing a *certiorari* petition.  Accordingly, given statutory tolling under 28 U.S.C. § 2244(d)(2), no time ran in the federal limitation prior to the October 11, 2011, issuance of the remittitur concluding the first state post-conviction proceedings. Absent other tolling or delayed accrual, the limitation period therefore *(fn. cont…)*

2

1    Subsequently, on October 25, 2012, the state district court granted the State's
2    motion for reconsideration and dismissed the second petition in its entirety as untimely
3    and successive. Petitioner timely appealed to the state supreme court. The second
4    state post-conviction appeal was submitted for decision on February 8, 2013, and
5    remains pending at this time.

6    Accordingly, if petitioner instead had waited for the outcome of the second state
7    post-conviction proceedings to file a federal petition, such a federal petition would have
8    been untimely, absent other tolling or delayed accrual, in the event that the state
9    supreme court holds that the second state petition is untimely.

10   **II.    EXHAUSTION**

11   Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust his state
12   court remedies on a claim before presenting that claim to the federal courts.  To satisfy
13   this exhaustion requirement, the claim must have been fairly presented to the state
14   courts completely through to the highest court available, in this case the Supreme Court
15   of Nevada.  *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (*en banc*);
16   *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003).  In the state courts, the petitioner
17   must refer to the specific federal constitutional guarantee and must also state the facts
18   that entitle the petitioner to relief on the federal constitutional claim.  *E.g., Shumway v.*
19   *Payne*, 223 F.3d 983, 987 (9th Cir. 2000). That is, fair presentation requires that the
20   petitioner present the state courts with both the operative facts and the federal legal
21   theory upon which his claim is based.  *E.g., Castillo v. McFadden*, 399 F.3d 993, 999
22   (9th Cir. 2005).  The exhaustion requirement ensures that the state courts, as a matter of
23   federal-state comity, will have the first opportunity to pass upon and correct alleged
24   violations of federal constitutional guarantees. *See, e.g., Coleman v. Thompson*, 501
25   U.S. 722, 731 (1991).  Under *Rose v. Lundy*, 455 U.S. 509 (1982), a petition presenting

26

27   (…fn. cont.)
     would expire one year later on October 11, 2012.  Under the governing law, an untimely
28   state petition does not statutorily toll the limitation period.

3

1  both exhausted and unexhausted claims must be dismissed without prejudice unless

2  the petitioner dismisses the unexhausted claims or seeks other appropriate relief.

3  **A.    Ground 1**

4      In Ground 1, petitioner alleges that he was denied rights to effective assistance

5  of trial and appellate counsel, a fair trial, and due process of law in violation of the Fifth,

6  Sixth and Fourteenth Amendments.   Petitioner seeks to incorporate fourteen claims of

7  ineffective assistance of trial counsel from pages 6-11 of his first state post-conviction

8  petition, and he further alleges that "to the extent that appellate counsel could have

9  raised any of these issues on direct appeal as plain error, he was prejudicially

10  ineffective as well."[3]

11      With one limited exception, none of these incorporated claims were presented to

12  the Supreme Court of Nevada on the first state post-conviction appeal.   In the fast track

13  statement on that appeal, petitioner pursued claims that he was denied effective

14  assistance of trial counsel when defense counsel: (a) failed to call an independent

15  forensic pathologist to rebut the State's experts physicians; (b) failed to call an

16  independent expert on battered person syndrome and failed to object to testimony by

17  two police officers suggesting that the victim was subject to battered person syndrome;

18  and (c) failed to inform petitioner early in the case that he faced a potential habitual

19  criminal adjudication so that he could consider a negotiated plea rather than face the

20  greater sentencing exposure.[4]  With the exception discussed below, none of these three

21  claims correspond to any of the fourteen claims set forth at pages 6-11 of the first state

22  post-conviction petition.[5]   The one exception referred to above is claim 11 in state

23  Ground I in the original *pro se* state petition.   Wheeler alleged therein that trial counsel

24  was ineffective for failing to object to Detective Fiore's testimony, *inter alia*, that the

25  victim looked battered and that the redness of her eyes came from blunt force trauma

26  _____

27  [3]Dkt. no. 6, at 4-5.

    [4]See dkt. no. 16, Ex. 15, at 6, 13 & 21.

28  [5]See dkt. no. 16, Ex. 9, at 6-11.

1    and strangulation because it constituted improper opinion testimony.[6]  As part of a much

2    broader claim pursued on the first post-conviction appeal, petitioner alleged that trial

3    counsel was ineffective for failing to object to Detective Fiore's testimony that the victim

4    looked battered and had petechiae (*i.e.*, redness from hemorrhaging) of her eyes from

5    strangulation because it constituted improper opinion testimony.[7]  Moreover, the

6    Supreme Court of Nevada addressed a claim on the appeal based upon "counsel's

7    failure to object to police officer opinions about the nature and cause of the victim's

8    injuries."[8]  This limited claim of ineffective assistance of trial counsel – only – therefore

9    is exhausted.  No related claims of denial of rights to effective assistance of appellate

10   counsel, a fair trial, or due process of law were exhausted on the first post-conviction

11   appeal.

12        In his response to the motion to dismiss, petitioner maintains that responding to

13   respondents' exhaustion arguments would be "redundant" in light of his motion to stay,

14   and he therefore "refrains" from responding and "defers" to his motion to stay.[9]

15   Petitioner's understanding of the effect of filing a motion to stay is flawed.  As

16   discussed, *infra*, a stay is not automatically granted in this context.  Further to the

17   current point, the filing of a motion to stay does not eliminate the exhaustion issues from

18   the case or render them "redundant." Under Local Rule LR 7-2(d), the failure to file

19   points and authorities in response to a motion in full or in part constitutes a consent to

20   the granting of the motion to the extent to which no response is made.  *E.g., Joseph v.*

21   *Las Vegas Metropolitan Police Dept.*, 2010 WL 3238992, slip op. at *5 (D. Nev., Aug.

22   13, 2010).  Petitioner accordingly has consented to the grant of the motion to dismiss

23   with regard to the exhaustion issues raised therein.

24

25   _____

26   [6]Dkt. no. 16, Ex. 9, at 10.

27   [7]Dkt. no. 16, Ex. 15, at 14.

     [8]Dkt. no. 16, Ex. 17, at 3.

28   [9]Dkt. no. 20, at 1-2.

1    Petitioner further suggests that any unexhausted claims presented must be

2  reviewed *de novo* by this Court. Petitioner again is mistaken. The Court cannot consider

3  the merits of an unexhausted claim except to *dismiss* the claim on the merits pursuant

4  to 28 U.S.C. § 2254(b)(2).[10]

5    Ground 1, accordingly, is unexhausted except for a claim of ineffective

6  assistance of trial counsel based upon counsel's failure to object to Detective Fiore's

7  testimony that the victim looked battered and had  redness from hemorrhaging of her

8  eyes from strangulation because it constituted improper opinion testimony.

9    **B.    Ground 2**

10   In Ground 2, petitioner alleges that he was denied rights to a fair trial, due

11  process of law, a voluntary plea, and effective assistance of counsel in violation of the

12  Fourth, Fifth, Sixth and Fourteenth Amendments.  Petitioner seeks to incorporate pages

13  11-14 of his first state post-conviction petition.[11]

14   In the referenced pages, in state Ground II in the original *pro se* petition,

15  petitioner alleged that defense counsel brought petitioner a plea offer prior to trial

16  wherein the State would not seek a habitual criminal adjudication if petitioner then

17  entered a plea of domestic battery causing substantial bodily harm as charged.

18  According to the claim, it was incumbent upon counsel to explain to petitioner that if he

19  declined the offer, the State could wait until after a guilty verdict to seek habitual

20  criminal treatment, increasing his potential exposure from 12 to 60 months to 60 to 240

21  months.  Petitioner maintained that, properly advised, he would have accepted the plea

22  agreement rather than risk the greater exposure.[12]

23   Respondents acknowledge that petitioner pursued the claim of ineffective

24  assistance of trial counsel on the first post-conviction appeal.[13]  The Court is persuaded

25   [10]Petitioner's reliance upon *Wiggins v. Smith*, 539 U.S. 510 (2003), is misplaced.

26  Nothing in *Wiggins* is contrary to the statements in the text.

   [11]Dkt. no. 6, at 5.

27   [12]Dkt. no. 16, Ex. 9, at 13-14.

28   [13]Dkt. no. 15, at 6; dkt. no. 16, Ex. 15, at 21-25.

by respondents' contention that petitioner did not exhaust the additional scattershot claims in the federal petition of a denial of constitutional rights to a fair trial, due process of law, and a voluntary plea.  A petitioner must present both the operative facts and the federal legal theory to the state courts to exhaust a claim.  *E.g., Castillo, supra.*

Ground 2 therefore is exhausted except for the claims based upon denial of rights to a fair trial, due process of law, and a voluntary plea.

## C.    Ground 3

In Ground 3, petitioner alleges that he was denied rights to effective assistance of trial and appellate counsel, a fair trial, and due process of law in violation of the Fifth, Sixth and Fourteenth Amendments.   Petitioner alleges that he was constructively deprived of the right to counsel under *United States v. Cronic*, 466 U.S. 648 (1984).  He incorporates the specific allegations of ineffective assistance of counsel in Ground 1; and he further seeks to incorporate pages 14-17 of his first state petition.[14]

In the referenced pages, in state Ground III in the original *pro se* petition, petitioner alleged in most pertinent part that he was constructively denied counsel because the conflict counsel appointed in his case was part of a group in which the lawyers were paid a flat $500 per case without regard to whether the case resulted in a dismissal, plea, or jury trial.  He alleged that his trial counsel therefore tried the case "on the fly" without investigation or preparation, including engaging in the alleged specific acts or omissions alleged in state Ground I.

Nothing corresponding to such a claim of constructive denial of counsel under *Cronic* was presented to Supreme Court of Nevada in the fast track statement on the first post-conviction appeal.

Ground 3 therefore is unexhausted.[15]

---

[14]Dkt. no. 6, at 5.

[15]The limited claim that is exhausted in federal Ground 1 under *Strickland* does not carry over to render the *Cronic* claim in Ground 3 exhausted in part.  The moving factual premise behind the *Cronic* claim – based upon a constructive denial of counsel – in Ground 3 is not exhausted.  There is no exhausted *Cronic* claim of constructive complete denial of counsel based upon such an isolated instance of alleged ineffective *(fn. cont…)*

### D.     Ground 4

A page with federal Grounds 4 through 7 was not included in the federal petition on file in this matter.  Respondents noted the absence of the page in their motion to dismiss. Thereafter, petitioner simply attached a copy of the missing page with his response to the motion to dismiss.  While this manner of presentation is technically insufficient to effectively amend the petition, the Court will ignore the technical deficiency by the *pro se* petitioner in order to expedite the ultimate resolution of the case.

In Ground 4, petitioner alleges that he was denied effective assistance of trial and appellate counsel because there was no investigation done to support a defense theory that the domestic violence victim received injuries instead from an accident.  He seeks to incorporate pages 13-16 of the counseled supplemental petition in the first state post-conviction proceeding.[16]

Ground 4 was exhausted on the first post-conviction appeal as a claim of ineffective assistance of trial counsel in failing to investigate and present expert testimony supporting a defense that the victim's injuries resulted from accident rather than domestic violence.  No corresponding claim of ineffective assistance of appellate counsel was exhausted on the post-conviction appeal.[17]

### E.     Ground 5

In Ground 5, petitioner alleges that he was denied effective assistance of trial counsel for failure to consult with him throughout the litigation, including during sentencing preparation.  He refers to pages 16-20 of the supplemental petition.  Dkt. no. 20, Ex. 24.

---

*(…fn. cont.)*
assistance as opposed to the limited claim under *Strickland* that was exhausted as to Ground 1.

[16]Dkt. no. 20, Ex. 24.

[17]See dkt. no. 16, Ex. 15, at 6-13; *id.*, Ex. 17, at 2 ("failure to investigate and present expert testimony").

No such claim corresponding to the claim at pages 16-20 of the supplemental petition was pursued in the fast track statement on the first state post-conviction appeal.[18]

Ground 5 is unexhausted.

**F.    Ground 6**

In Ground 6, petitioner alleges that he was denied effective assistance of trial counsel because counsel failed to file motions to preclude evidence that allegedly was very prejudicial at trial. He seeks to incorporate pages 20-22 of the counseled supplemental petition in the first state post-conviction proceeding.[19]

No such claim corresponding to the claim at pages 20-22 of the supplemental petition was pursued in the fast track statement on the first state post-conviction appeal.[20]

Ground 6 is unexhausted.

**G.    Ground 7**

In Ground 7, petitioner alleges that he was denied effective assistance of trial counsel because counsel failed to advise petitioner that if he proceeded to trial he risked being adjudicated as a habitual criminal.  Petitioner seeks to incorporate pages 22-23 of the counseled supplemental petition in the first state post-conviction proceeding.[21]

Ground 7 is in substantial part redundant of Ground 2 and therefore is in substantial part exhausted to the same extent.

Respondents contend, however, that Ground 7 is not exhausted to the extent that petitioner included in the incorporated supplemental petition factual allegations that were not included in the fast track statement.  Respondents contend in particular that

---

[18]Compare dkt. no. 16, Ex. 10, at 16-20, with *id.*, Ex. 15, at, *e.g.*, 6, 13 & 21.
[19]Dkt. no. 20, Ex. 24.
[20]Compare dkt. no. 16, Ex. 10, at 20-22, with *id.*, Ex. 15, at, *e.g.*, 6, 13 & 21.
[21]Dkt. no. 20, Ex. 24.

Ground 7 is unexhausted to the extent that petitioner alleged in the incorporated supplemental petition that: (a) his wife and mother-in-law would testify that counsel never informed him that he faced habitual criminal exposure; and (b) his mother attended a meeting with petitioner and his counsel during which the plea offer was discussed.

The Court is not persuaded.  Reliance upon additional factual allegations in federal court that do not fundamentally alter the legal claim already considered by the state courts does not render a claim unexhausted.  *See Vasquez v. Hillery*, 474 U.S. 254, 257-60 (1986).[22]

---

[22]Whether entirely new evidence then may be considered in federal court presents a different issue, however, separate and apart from the doctrine of exhaustion. In *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), the Supreme Court held that deferential review on the merits pursuant to AEDPA under 28 U.S.C. § 2254(d)(1) of a claim adjudicated on the merits by the state courts is restricted to the record that was before the state courts. The Court is persuaded by Judge Reed's analysis harmonizing *Vasquez* and *Pinholster*:

> The Court concludes . . . that the two rules can be harmonized, as the two rules in truth operate independently of one another. The *Vasquez* rule applies to all federal habeas claims, without regard to whether or not the claims later may be subject to deferential review on the merits under § 2254(d)(1). It would make little sense to restrict the rule announced in *Vasquez* to the ambit of evidence that may be considered on deferential review under *Pinholster* – based upon alleged inconsistency otherwise between the two rules – as to a habeas claim that instead was subject to *de novo* review rather than deferential AEDPA review.  That is, there is no inconsistency – practical or otherwise – between the two rules in that instance because the *Pinholster* rule is inapplicable in that context.
>
> Thus, resolving the exhaustion issue according to the ambit of evidence that may be considered on deferential AEDPA review under *Pinholster* in truth would put the cart before the horse, with *Pinholster* being the cart.  Analytically, the exhaustion issue should be resolved in the same manner without regard to whatever the scope of factual and legal review ultimately later may be on the merits, whether on deferential or *de novo* review. Without a doubt, as a practical matter, in many cases additional factual allegations in the federal petition that will not render a claim unexhausted under *Vasquez* nonetheless will be excluded from federal consideration on the merits under *Pinholster* as to claims subject to deferential AEDPA review.  However, as to claims instead subject to *de novo* review, the rule in *Vasquez* operates both independently from and not inconsistently with the rule in *Pinholster*. These, again, are independent rules addressed to what are often practically interrelated but nonetheless legally distinct issues.
>
> The Court accordingly will follow the rule of exhaustion stated in *Vasquez* as a still fully viable rule following *Pinholster*.

(fn. cont…)

Ground 7 is exhausted.  The Court will decline to dismiss Ground 7 as redundant of the exhausted portion of Ground 2 given the slightly different range of factual allegations included within the claims.  In any answer ultimately filed on the merits, respondents may combine their response to the two grounds.

### H.   Ground 8

In Ground 8, petitioner alleges that he was denied effective assistance of trial counsel because counsel failed to present any forensic expert witnesses regarding the victim's injuries.  Petitioner refers to pages 23-29 of the supplemental petition.[23]

The only pertinent claims pursued on the first post-conviction appeal — or, alternatively,  considered on the merits by the state supreme court — were claims that counsel failed to object to police officer testimony regarding battered person syndrome, to present an expert on that syndrome, and to produce an expert regarding the victim's injuries.[24]

All claims in Ground 8 therefore are unexhausted except claims of ineffective assistance of trial counsel alleging that counsel failed to object to police officer testimony regarding battered person syndrome, to present an expert on that syndrome, and to produce an expert regarding the victim's injuries.

### I.   Ground 9

In Ground 9, petitioner alleges that he was denied effective assistance of trial counsel because counsel failed to present zealous closing argument comporting with

---

(…fn. cont.)

*Moor v. Palmer*, No. 3:10-cv-00401-RCJ-WGC, dkt. no. 27, at 9-10 (D.Nev., July 17, 2012).  *Accord Lewis v. Nevada*, 2:10-cv-01225-PMP-CWH, dkt. no. 53, at 2-3 (D.Nev., Feb. 4, 2013) (following Judge Reed's analysis); *Aytch v. Legrand*, 3:10-cv-00767-RCJ-WGC, dkt. no. 33, at 2 n.2 (D. Nev. March 29, 2013)(same).

[23]Dkt. no. 6, at 7.

[24]Dkt. no. 16, Ex. 15, at 13-17; *id.*, Ex. 17, at 2 ("failure to investigate and present expert testimony concerning the victim's injuries and battered-woman syndrome").  Respondents make no argument that Ground 8 as specifically alleged in the federal petition is narrower than the state ground, even allowing for the reference to the pages in question.

the defense theory of the case.  Petitioner refers to pages 30-31 of the counseled supplemental petition in the first state post-conviction proceeding.[25]

No such claim was pursued on the subsequent appeal.  Ground 9 is unexhausted.

### J.      Grounds 10 through 15

Petitioner maintains that Grounds 10 through 15 were raised in his second state post-conviction petition.  The proceedings on that petition remain pending in the state court.  Grounds 10 through 15 are unexhausted.[26]

### K.      Grounds 16 through 19 (redesignated as such by the Court)

Petitioner further appears to present four grounds that he maintains were presented previously on his direct appeal from the judgment of conviction.  He designates these grounds as Grounds I through IV despite the fact that he designated other claims in the federal petition by those numbers.[27]   Petitioner should have designated the claims in the federal petition in a sequential order without repetition of numbers.  The Court will redesignate the claims as Grounds 16 through 19. The Court is not persuaded by respondents' contention that Ground 17 is unexhausted because petitioner presented only a state law claim to the state courts, for substantially the reasons discussed in the following section concerning Ground 17.

Grounds 16 through 19 (redesignated) are exhausted.

### III.   STATE LAW CLAIMS

Respondents contend that (redesignated) Grounds 17 through 19 present only state law claims that are not cognizable on federal habeas review.  Petitioner notes his disagreement with respondents' position in his response, but he "defers" to his  motion

---

[25]Dkt. no. 6, at 7.

[26]The Court makes no implied holding as to the degree of correlation between federal Grounds 10 through 15 and the claims in second state petition.  Petitioner suggests no basis for exhaustion of the claims other than via presentation in the second state petition, and the Court accordingly decides the exhaustion issue as to the claims on that basis.

[27]Dkt. no. 6, at 13-15.

to stay.[28]  Petitioner's response is flawed on this issue as well.  The motion to stay does not in any sense excuse petitioner from responding to the motion to dismiss. Petitioner's failure to respond on this issue within his opposition to the motion to dismiss, which was followed by a *Klingele* notice (dkt. no. 17), can operate as a consent to a grant of the motion in this regard under Local Rule LR 7-2(d).  *E.g., Joseph, supra.* He further could not properly argue the issue for the first time in his reply on the motion to stay.

The Court nonetheless is not persuaded by respondents' conclusory argument that the incorporated direct appeal claims in Grounds 17 through 19 do not present federal constitutional claims.

In the claim corresponding to Ground 17, petitioner claimed, *inter alia*, that he had been convicted of a felony offense that had not actually been established by the legislature as opposed to a misdemeanor in the situation presented.  He contended that the prosecution violated a rule of lenity that he maintained was grounded in the federal constitution.[29]  The state supreme court's implicit rejection of the claim, perhaps, may not have been contrary to or an unreasonable application of clearly established federal law, which is an issue for another day.[30]  However, the claim presented on direct appeal was not premised exclusively upon state law with no reliance upon the federal constitution.

In the claim corresponding to Ground 18, petitioner challenged the State's ability to amend the information post-verdict to add a habitual criminal allegation after the defendant had exercised his Sixth Amendment right to a jury trial.  Petitioner contended, *inter alia*, that: (a) the State's action "constituted impermissible prejudice to the Appellant pursuant to the Fifth, Sixth and Fourteenth Amendments of the Federal

---

[28]Dkt. no. 20, at 2 & 3-4.

[29]Dkt. no. 16, Ex. 4, at 16-17.

[30]*Cf. Carey v. McDaniel*, 3:10-cv-00143-LRH-WGC, dkt. no. 23, at 5 (discussing the tangential relationship between a federal rule of lenity and federal constitutional doctrine).

Constitution;" (b) "sentencing Appellant as [a habitual criminal] would be a prejudicial deprivation of his right to effective representation of counsel" because counsel had failed to advise him prior to trial of the possibility of being adjudicated a habitual criminal; (c) "the trial court simply summarily denied all of counsel's constitutional challenges to the process," (d) the State could not file the post-verdict amendment with "Constitutional impunity" under due process; and (e) the filing of the amendment after petitioner had exercised his Sixth Amendment right to a jury trial violated his Fifth and Sixth Amendment rights.[31]  Whether these federal constitutional claims ultimately have merit on deferential AEDPA review, again, is an issue for another day.  Petitioner did not present an exclusively state law claim, however.

In the claim corresponding to Ground 19, petitioner alleged that the trial court abused its discretion and violated his due process rights when it imposed the habitual criminal sentence.  Petitioner asserted, *inter alia*, that "federal due process requires the sentencing court to exercise its discretion and weigh the appropriate factors for and against the defendant  before adjudicating him as an habitual criminal," *citing*, *inter alia*, *Walker v. Deeds*, 50 F.3d 670 (9th Cir. 1995).  He further urged that the state supreme court "should impose a different due process standard in evaluating a sentence under" the provision under which petitioner was sentenced.[32]  While the question is closer with regard to the more conclusory and tangential constitutional references in this claim, the Court nonetheless is not persuaded that the claim is subject to dismissal as an exclusively state law claim.

The motion to dismiss therefore will be denied in part to the extent that respondents seek the dismissal of redesignated Grounds 17 through 19 as presenting only noncognizable state law claims.

///

---

[31]Dkt. no. 16. Ex. 4. at 18-20.

[32]See dkt. no. 6-2, at electronic docketing pages 61 & 63.  Respondents failed to include page 28 of the brief in the copy filed with their state court record exhibits.

## IV.     MOTION TO STAY

The stay procedure approved in *Rhines v. Weber*, 544 U.S. 269 (2005), is the only stay procedure that has been discussed or invoked herein.[33]

In order to obtain a stay under *Rhines*, a petitioner must demonstrate that there was good cause for the failure to exhaust the claims, that the unexhausted claims include at least one claim that is not plainly meritless, and that the petitioner has not engaged in intentionally dilatory litigation tactics.  *See* 544 U.S. at 278.

### A.     Good Cause

The precise contours of what constitutes "good cause" in this context remain to be fully developed in the jurisprudence.  On the one hand, the Ninth Circuit has held that a requirement that the petitioner show "extraordinary circumstances" to obtain a stay does not comport with the good cause standard in *Rhines*. *See Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005).  On the other hand, *Rhines* instructs that a stay should be available only in "limited circumstances," such that the requirement of good cause therefore should not be interpreted in a manner that would render stay orders routine.  *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008).  Accordingly, a mere impression by a petitioner that a claim was exhausted is not sufficient to establish good cause for a failure to exhaust, given that, if it were, "virtually every habeas petitioner, at least those represented by counsel, could argue that he *thought* his counsel had raised an unexhausted claim and secure a stay."  *Id.* (emphasis in original).[34]

---

[33]The Court is not persuaded by respondents' contention that a stay is unavailable because the petition is wholly unexhausted. The discussion in the preceding section reflects that the petition is a mixed petition with both exhausted and unexhausted claims.

[34]Respondents acknowledge the current precedent holding that extraordinary circumstances are not required. Respondents, through an appropriate reservation, seek to preserve for later review the argument that the standard for "good cause" under *Rhines* should be similar to the standard for equitable tolling.  That is, they contend that the petitioner should be required to establish that extraordinary circumstances beyond his control made it impossible for him to exhaust the claims.

Regarding respondents' reserved issue, the Court is reluctant to import standards either from equitable tolling or procedural default case law that are designed to assess whether a petition or claim should be dismissed with prejudice, *i.e.*, with conclusive finality, and which on occasion may require an evidentiary hearing. *(fn. cont…)*

1    In the present case, the *pro se* petitioner in truth has not articulated a viable

2  basis for establishing good cause.   In the original motion, petitioner presented no

3  apposite argument supporting the request for a stay. The lay petitioner essentially

4  proceeded on the premise that a stay to exhaust the claims in the second state petition

5  was available to him as a matter of course simply if he requested one.   Respondents

6  contended in their response, *inter alia*, that petitioner had not satisfied the requirements

7  for a stay pursuant to *Rhines*.   Petitioner thereafter referred to the *Rhines* requirements

8  in his reply.   However, he expressly, in his terms, "embraced" the rejected argument in

9  *Wooten* that he "thought" that his counsel had raised the unexhausted claims.

10    Respondents' counsel thus perhaps has had the better of the argument on the

11  motion to stay. The Court nonetheless must do substantial justice in the situation

12  presented. The Court will not ignore a viable basis for a finding of good cause

13  recognized by a prior decision in this District merely because the *pro se* petitioner is not

14  as adept at legal argument as an attorney might be.

15    As Judge Dawson has recognized in a prior case,[35] the Supreme Court identified

16  one example of good cause subsequent to *Rhines* that would appear to be applicable to

_____

18  (…fn. cont.)
Arguably, such heightened standards – directed to the question of whether, in the final
19  analysis, a claim is conclusively procedurally barred – are inappropriate for the
preliminary procedural question of whether a stay should be entered while petitioner
20  fully exhausts claims in a mixed petition.  It generally is more appropriate for the state
courts to have the opportunity in the first instance to consider the application of
21  conclusive procedural bars.  *Cf. Gonzalez v. Wong*, 667 F.3d 965, 980 (9th Cir. 2011),
*cert. denied*, 133 S.Ct. 155 (2012) (noting that, in the circumstances presented, a stay
22  was appropriate because it provided the state court with the first opportunity to resolve
the claim).  The Court is not sanguine that it should adopt standards that potentially
23  could require an evidentiary hearing to resolve the preliminary procedural issue
presented by a request for a stay.

24    If the bar that must be cleared under *Rhines* were as high as that required to
establish either equitable tolling or cause-and-prejudice, the Supreme Court and the
25  Ninth Circuit know quite well how to invoke such established standards. To date, neither
has done so. The Ninth Circuit instead has stated to the contrary in *Jackson* that an
26  "extraordinary circumstances" standard does not comport with the *Rhines* good-cause
standard.  The Court acknowledges, however, respondents' reservation of the issue for
27  later review.

      [35]*Brown v. Neven*, No. 2:11-cv-00790-KJD-NJK, dkt. no. 35, at 5-8 (D. Nev. Jan.
28  25, 2013).

the situation presented in a case such as this one.  In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Supreme Court held that a state post-conviction petition that was held to be untimely under state law was not "properly filed" as required for statutory tolling under 28 U.S.C. § 2244(d)(2).  In arguing for a different rule, the petitioner in that case challenged the fairness of a rule under which the tolling effect of a state petition would be conclusively established only after the fact.  Significantly for the present case, the Supreme Court responded as follows:

> Finally, petitioner challenges the fairness of our interpretation. He claims that a "petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,' " and thus that his federal habeas petition is time barred . . . . *A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. See Rhines v. Weber, ante*, 544 U.S., at 278, 125 S.Ct. 1528, 1531, 161 L.Ed.2d 440 (2005).  *A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court. Ibid.* ("[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics," then the district court likely "should stay, rather than dismiss, the mixed petition").

544 U.S. at 416-17 (italic textual emphasis added).

The lay petitioner in this case – however inartfully – substantially has followed the procedure outlined by the Supreme Court in *Pace*.  After state post-conviction counsel did not raise additional claims that petitioner wished to pursue, he promptly filed a second petition in state court seeking to present the claims.  However, petitioner had no assurance – and still has none – when he filed the second state petition that the state courts would accept his arguments seeking to establish cause and prejudice to overcome state procedural bars to the otherwise untimely and successive second state petition. The federal limitation period would expire in the meantime, however, if he waited until the outcome of the proceedings on the second state petition before filing a federal petition. Petitioner thereupon has invoked, again however inartfully, the procedure identified in *Pace* as the solution to this procedural dilemma.  He has filed a protective federal petition and now seeks to stay the petition while he seeks to exhaust

the claims in the second state petition and present his arguments to the state courts seeking to overcome the state procedural bars to the second petition.  Under the clear teaching of *Pace*, petitioner's reasonable confusion, *i.e.,* uncertainty, as to whether the second petition ultimately will be held to be timely by the state courts "will ordinarily constitute 'good cause' for him to file in federal court" before exhaustion is completed on the second petition.

Indeed, the procedural track substantially followed in this case is essentially the track that state and federal court rulings effectively have been directing Nevada petitioners down in cases where the petitioner wishes to pursue claims that his direct appeal and/or state post-conviction counsel did not pursue.  The state courts (as well as the federal courts) generally do not allow litigants to present their own *pro se* claims or argument when they are represented by counsel.  This Court further has encountered cases where the state courts also do not grant *pro se* motions for the withdrawal of counsel in such proceedings, and the law is clear that there is no right to self-representation either on direct appeal or in state post-conviction proceedings. The Court thus repeatedly has rejected the proposition that a petitioner exhausts claims when he attempts to present claims *pro se* on direct appeal and/or on state post-conviction review while represented by counsel but is not permitted to do so by the state courts.[36] The Court further has repeatedly rejected the proposition that claims that a petitioner thereafter might pursue in a second petition are technically exhausted by virtue of being procedurally defaulted, given that the Nevada state courts apply substantially the same standards as do the federal courts for overcoming a procedural bar.[37]

_____

[36] *See,e.g., Elliott v. Benedetti*, No. 3:09-cv-00265-LRH-RAM, dkt. no. 30, at 5 & 11 (D. Nev. March 31, 2011).

[37] *See,e.g., Johnson v. Neven*, No. 2:08-cv-01363-JCM-RJJ, dkt. no. 70, at 13-15 (D.Nev. July 26, 2012) (declining to find exhaustion on the basis of procedural default absent an unequivocal stipulation, *inter alia*, that petitioner could not overcome the procedural bars under the substantially similar standards for overcoming the bars in state court).  Given the similar standards, substantially any argument that a petitioner might present in federal court to overcome a procedural default can be presented to the state courts in the first instance. As the Court discussed in note 34, *supra*, this *(fn. cont…)*

1    Such state and federal court rulings effectively drive a similarly-situated petitioner

2 to follow the same procedural course that petitioner followed here, *i.e,* to file a timely

3 protective federal petition and request a stay in order to seek to exhaust his *pro se*

4 claims in a second state petition.  There simply is no other potentially viable procedural

5 track to exhaust the *pro se* claims in this instance. The state courts will not allow a

6 petitioner to pursue claims *pro se* while represented, and this Court has repeatedly

7 rejected the argument that the *pro se* claims are exhausted because there is no

8 available state procedure to present the claims.

9    The Supreme Court's decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012),

10 further reinforces a conclusion that good cause should be found in this procedural

11 posture.  In *Martinez*, the Court held that inadequate assistance of counsel in initial-

12 review collateral proceedings may establish cause for a petitioner's failure to pursue a

13 claim of ineffective assistance of trial counsel in such proceedings.  If the Nevada state

14 supreme court ultimately declines across the board to recognize the rule in *Martinez* as

15 a potential basis for overcoming a state procedural bar, then this Court will factor such a

16 holding into its application of exhaustion and procedural default rules.  In the meantime,

17 it is difficult to conceive how a petitioner effectively would present a *Martinez*-based

18 argument in the state courts to overcome a failure by state post-conviction counsel to

19 present a claim in the state district court other than through the filing of a *pro se* second

20 state petition.[38]

---

21 *(…fn. cont)*

22 procedure gives the state courts the first opportunity to consider the application of state
procedural bars and, if the bars are overcome, the merits of the claims.

23    [38]Particularly given *Martinez*, the Court is not persuaded that a petitioner must
present express requests to his state post-conviction counsel to pursue all of the

24 specific claims raised in the *pro se* second state petition in order to demonstrate good
cause.  A petitioner seeking to establish ineffective assistance of trial or appellate

25 counsel is not required to establish that he requested trial or direct appeal counsel to
pursue a claim or issue, just that counsel was ineffective for failing to do so.  A different

26 situation perhaps might be presented in a case where a petitioner instead waits until
after a motion to dismiss for lack of exhaustion is filed in order to seek to pursue a

27 second state petition. Here, however, petitioner promptly pursued the only state
procedural vehicle potentially open to a petitioner seeking to pursue claims *pro se* that

28 his state post-conviction counsel either declined – or failed – to pursue.
*(fn. cont…)*

1    Therefore, absent unusual circumstances not presented here, and given the

2    discussion in *Pace*, the Court finds that a petitioner in this procedural posture has

3    demonstrated good cause under *Rhines* when he diligently and promptly seeks to

4    pursue a second state petition to exhaust *pro se* claims that his state post-conviction

5    counsel did not pursue.   Further, the petitioner in essence invokes the protective-

6    petition procedure that the Supreme Court approved in *Pace* for situations where the

7    timeliness of a state petition is at issue.   The Court, accordingly, finds that petitioner has

8    demonstrated good cause under *Rhines*.

9       **B.     Not Plainly Meritless Claim**

10   When the *Rhines* Court discussed the issue of whether a petitioner has

11   presented a claim that is not plainly meritless, the Court made a comparison cite to 28

12   U.S.C. § 2254(b)(2) concerning this inquiry.   544 U.S. at 277.   The Ninth Circuit has

13   held that a district court may reject an unexhausted claim on the merits pursuant to §

14   2254(b)(2) "only when it is perfectly clear that the applicant does not raise even a

15   colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

16   Respondents posit in their response that the *pro se* petitioner failed in his original

17   motion to address the merits of the unexhausted claims, other than to allege that his

18   claims presented constitutional claims.   Petitioner nonetheless presents claims in the

19   federal petition that are being pursued in the second state petition that are not plainly

20

21   _____

*(…fn. cont.)*
22   Further, the fact that appellate and post-conviction counsel are not required to
     pursue every non-frivolous claim reinforces rather than undercuts a finding of good
     cause in this context.   Again, if the state courts will not allow petitioners to present *pro*
23   *se* papers in a represented case (as is the practice in both state and federal court) and if
     the federal court will not recognize such filings as exhausting claims, a petitioner must
24   have some procedural vehicle to fairly present the *pro se* claims to the state courts.
     Those courts perhaps ultimately may find such claims to be barred.   However, they will
25   have been given the first opportunity to consider whether the *pro se* petitioner has
     meritorious claims that state post-conviction counsel failed to pursue through
26   inadequate assistance to defeat state procedural bars.
     The Court further is not persuaded that a lay petitioner must seek to proceed
27   wholly without counsel on the first state petition in order to establish good cause in this
     context.   Here, petitioner sought to present claims *pro se* promptly following the
28   conclusion of the represented proceedings in the state district court.

meritless under the *Cassett* standard.  For example, in Ground 11, petitioner alleges, *inter alia*, that he was denied effective assistance of trial counsel when counsel failed to challenge: (a) alleged prosecutorial misconduct when the prosecution allegedly coerced and manipulated the victim to testify at the preliminary hearing knowing that she was impaired by intoxication and illness and thereafter impeached her trial testimony with the unreliable preliminary hearing testimony, without disclosing evidence that would have provided a basis for impeaching her  preliminary hearing testimony; (b) alleged prosecutorial misconduct when the prosecution allegedly conspired with an investigating detective to make it appear that the victim was lucid when she spoke with the detective at the hospital, despite medical evidence allegedly to the contrary, thereby allowing the State to impeach her trial testimony with her alleged original statement, all in an allegedly improper effort to undercut evidence otherwise tending to establish that the victim and a friend were acutely intoxicated at the relevant time; (c) alleged prosecutorial misconduct when the prosecution (i) allegedly misstated to the jury that Wheeler did not suffer injuries similar to the victim's from slipping and falling in his own blood, when both the prosecutor and trial counsel had information to the contrary, and (ii) injected the prosecutor's own allegedly personal and unfounded belief that the victim's trial testimony was due both to her fear of retaliation by the defendant and to having been "brainwashed" by him; (d) alleged inconsistencies in the investigating police officers' reports and testimony regarding the sequence of events, including the point at which Wheeler slit his wrists and bled on the floor in relation to an altercation with his wife; and (e) allegedly improper evidence collection procedures and inconsistencies in officers' testimony regarding same, including the procedures and testimony regarding a knife introduced in evidence.  On the record currently presented, the Court is unable to say that it is perfectly clear that petitioner does not raise even a colorable federal claim in, *inter alia*, these claims.

As reiterated below, the Court's limited holding above does not signify either that petitioner is entitled to relief on the claims or that the claims potentially may not be

subject to state procedural bars.  However, the unexhausted claims include claims that are not plainly meritless on the face of the pleadings and on the current partial record, when viewed under the *Cassett* standard.

### C.    Not Intentionally Dilatory

Respondents do not contend that petitioner has engaged in intentionally dilatory tactics herein, and the record does not reflect that he has.  The relevance of this factor, as a practical matter, largely is restricted to capital cases.[39]

### D.    Grant of *Rhines* Stay

Accordingly, following consideration of all the *Rhines* factors, the Court finds that the matter should be stayed pursuant to *Rhines*, under the conditions specified in the disposition paragraphs of this order.

The Court expresses no opinion by this order as to whether the circumstances presented satisfy the cause-and-prejudice standard with respect to any claim of procedural default.  The holding herein should not be read as an express or implied holding on this issue or any other issue.  The Court holds here only that the criteria for a stay under *Rhines* have been satisfied, and its holding in this order is expressly limited to that specific context.

### E.    Request for *Slack* Instruction

Respondents request that, if the Court grants a stay, it instruct petitioner that he must bring only exhausted claims upon his return to federal court.

Respondents rely upon *Slack v. McDaniel*, 529 U.S. 473 (2000).  In *Slack*, the Supreme Court held that a federal petition filed after a prior petition had been dismissed without prejudice as a mixed petition was not a successive petition.  The Nevada state

---

[39]*Cf. Lawrence v. Florida*, 549 U.S. 327, 344 & n. 9 (2007)(Ginsburg, J., dissenting) ("Most prisoners want to be released from custody as soon as possible, not to prolong their incarceration. They are therefore interested in the expeditious resolution of their claims. . . .   Though capital petitioners may be aided by delay, they are a small minority of all petitioners."); *Valdovinos v. McGrath*, 598 F.3d 568, 574 (9th Cir. 2010), *vacated for reconsideration on other grounds*, 131 S.Ct. 1042 (Jan. 24, 2011) (petitioner "had not engaged in dilatory tactics and he had no motivation for delay, as he is not a capital defendant").

1    respondents raised the concern in *Slack* that "upon exhaustion, the prisoner would

2    return to federal court but again file a mixed petition, causing the process to repeat itself

3    . . . [such that] a vexatious litigant could inject undue delay into the collateral review

4    process." 529 U.S. at 488. The Supreme Court then identified a number of factors that

5    would tend to minimize the likelihood of that occurring, including the application of state

6    procedural bars and the then relatively recently adopted provisions of AEPDA.[40]

7    Counsel for the habeas petitioner further conceded that the "it would be appropriate for

8    an order dismissing a mixed petition to instruct  an applicant that upon his return to

9    federal court he is to bring only exhausted claims," with the Court citing to Federal Rule

10   of Civil Procedure 41(a) and (b). 529 U.S. at 489.

11         This Court does not read *Slack* as inexorably requiring the requested instruction

12   in a case that is stayed pursuant to *Rhines*. The *Slack* Court was referring to a condition

13   placed upon a dismissal without prejudice under Rule 41.  A stay is not a dismissal,

14   although the Court, of course, may place conditions upon a stay. Further, as the

15   Supreme Court then alluded to only four years after the passage of the Act, the

16   provisions of AEDPA curtail the ability of a vexatious petitioner to pursue serial mixed

17   petitions. The prospect of a petitioner being able to effectively present serial mixed

18   petitions *ad infinitum* is far more unlikely under AEDPA, even within a single action with

19   stays, due to the combined impact of the federal one-year limitation period and relation-

20   back rules.

21         If *Slack* unequivocally commanded the requested instruction, this Court, of

22   course, would give it.  However, the Court is reluctant to render an in effect anticipatory

23   ruling and instruction regarding a situation that is not presented as yet.  For example,

24   the Court is not sanguine that it necessarily would preclude a petitioner from pursuing

25   an unexhausted claim after a stay if in the interim the petitioner had discovered the

26   _____

27   [40]*Cf. Slack*, 529 U.S. at 478-79.  In *Slack*, both the first federal petition in 1991
     and the second petition in 1995 were filed prior to the effective date of AEDPA.
28   Accordingly, neither the second petition nor any claims raised therein were subject to,
     *e.g.*, the one-year federal limitation period in § 2244(d)(1).

factual predicate for a claim that could not have been discovered previously through the exercise of due diligence. *Cf.* 28 U.S.C. § 2244(d)(1)(D)(discovery rule resulting in delayed accrual of federal limitation period as to a claim).  The better practice arguably would be to address whether a petitioner can pursue additional unexhausted claims if and when such a request is presented, based upon the circumstances then presented. Respondents, understandably, are concerned with the prospect of vexatious serial habeas litigation.  However, there also is a countervailing consideration that a habeas petitioner generally will not be able to seek federal habeas relief thereafter once a federal petition is concluded on the merits.  The better practice again is to address any situation of additional unexhausted claims being raised based on the circumstances then presented.

That said, if any of the claims that the Court has found to be unexhausted in the present order are not exhausted by the currently pending state proceedings, petitioner will have to dismiss any such still-unexhausted claims after the stay is lifted.  Under *Rose*, he must dismiss any such still-unexhausted claims to avoid dismissal of the entire petition.

**V.   CONCLUSION**

IT IS THEREFORE ORDERED that respondents' motion to dismiss the petition (dkt. no. 15) is GRANTED IN PART and DENIED IN PART, such that the Court holds that the following claims (the "unexhausted claims") are not exhausted:

(a)   Ground 1 except for a claim of ineffective assistance of trial counsel based upon counsel's failure to object to Detective Fiore's testimony that the victim looked battered and had  redness from hemorrhaging of her eyes from strangulation because it constituted improper opinion testimony;

(b)   the claims in Ground 2 based upon denial of rights to a fair trial, due process of law, and a voluntary plea;

(c)   Ground 3 in its entirety;

(d)     the claim of ineffective assistance of appellate counsel in Ground 4;

(e)     Grounds 5 and 6 in their entirety;

(f)     Ground 8 except for claims of ineffective assistance of trial counsel alleging that counsel failed to object to police officer testimony regarding battered person syndrome, to present an expert on that syndrome, and to produce an expert regarding the victim's injuries; and

(g)     Grounds 9 through 15 in their entirety.

IT IS FURTHER ORDERED that petitioner's motion to stay (dkt. no. 21) is GRANTED and that this action is STAYED pending completion of the pending state proceedings. Petitioner thereafter may move to reopen the matter, and any party otherwise may move to reopen the matter at any time and seek any relief appropriate under the circumstances.

IT IS FURTHER ORDERED that, taking into account that state post-conviction proceedings already are pending, the grant of a stay is conditioned upon petitioner returning to federal court with a motion to reopen within forty-five (45) days of issuance of the remittitur by the Supreme Court of Nevada at the conclusion of all state court proceedings.[41]

IT IS FURTHER ORDERED that if petitioner intends to amend the petition after this action is reopened, he shall file together with the motion to reopen either a motion for leave to amend along with the proposed verified amended petition or a motion for extension of time to move for leave to amend.[42] Respondents shall have thirty (30) days

---

[41]If *certiorari* review will be sought or thereafter is being sought, either party may move to reinstate the stay for the duration of any such proceedings.  *Cf. Lawrence v. Florida*, 549 U.S. 327, 335 (2007).

[42]No claims in the current pleadings are dismissed by this order. Any further *pro se* pleadings filed by petitioner herein must be filed on the Court's required noncapital § 2254 form, must allege all of his claims with specificity within the petition form itself without incorporation of other documents by reference, must set forth all of petitioner's claims within a single stand-alone pleading, and otherwise must comply with all instructions for the form.

to file a response to the motion or motions filed.  The reopened matter will proceed under the current docket number.

IT IS FURTHER ORDERED, due to staffing changes, that any hard copies of any further state court record exhibits filed herein shall be forwarded to the staff attorneys in Las Vegas.

IT IS FURTHER ORDERED that the Clerk of Court shall administratively close this action until such time as the Court grants a motion to reopen the matter.

DATED THIS 29th day of May 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE